FILED
2013 Sep-03  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN DAVID TEICHMILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 5:12-CV-2227-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I. Introduction

On March 27, 2009, the claimant, Justin D. Teichmiller, applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. (R. 35.) The claimant alleges disability commencing on January 17, 2007 because of back pain and degenerative disc disease. (R. 72.) The Commissioner denied the claim both initially and on reconsideration. (R. 74.) The claimant filed a timely request before an Administrative Law Judge, and the ALJ held a hearing on August 17, 2010. (R. 47.) In a decision dated February 3, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and thus was ineligible for disability insurance and supplemental security income. (R. 36.) On April 20, 2012, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1.) The claimant has exhausted his administrative remedies, and this court has jurisdiction

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3.) For the reasons stated below, the court is of the opinion that the decision of the Commissioner is due to be affirmed.

## II. Issues Presented

Mr. Teichmiller presents the following issues for review:

1. Whether the ALJ properly rejected Teichmiller's subjective complaints of pain.

2. Whether the ALJ properly developed the record.

## III. Standard of Review

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).   The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."

*Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.

1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).  "Substantial evidence" is

"more than a scintilla and is such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d

1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,*

936 F.2d at 1145.  "No . . . presumption of validity attaches to the [Commissioner's]

conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

**IV. Legal Standard**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months . . . .

To make this determination, the Commissioner employs a five step, sequential

evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *See* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain. *Id.* This determination is a question of fact for the ALJ, subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).

Because the application of this standard often requires a credibility assessment, the ALJ's reasons for discrediting the claimant's testimony must be premised on substantial evidence and be sufficiently explicit. *See e.g., Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). The determination of credibility is reserved solely for the Commissioner and is not a proper

4

function for the courts. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000)

(citing *Grant v. Richardson*, 445 F.2d (5th Cir. 1971)).[1] When the Commissioner states a

clear finding of credibility, it should not be disturbed unless it is not supported by

substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In applying the pain standard, the ALJ must explicitly articulate his or her reasons

for rejecting the plaintiff's subjective complaints of pain; if the ALJ fails to properly

articulate his or her reasons for discrediting the plaintiff's subjective complaints of pain,

the court must accept the testimony as true. *Hale v. Bowen*, 831 F.3d 1007, 1012 (11th

Cir. 1987). Furthermore, the ALJ cannot reject a claimant's testimony based solely on his

or her own observations or on criteria that are unsubstantiated by objective medical

evidence. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

The ALJ has "a basic duty to develop a full and fair record." *Ellison v. Barnhart*,

355 F. 3d 1272, 1276 (11th Cir. 2003). However, the ALJ is not required to order a

consultative examination to fulfill this duty unless the record show that such an

examination is needed for the ALJ to render a decision. *Holladay v. Bowen*, 848 F. 2d

1206, 1210 (11th Cir. 1988); *see also Good v. Astrue*, 240 Fed. Appx. 399, 404 (11th Cir.

2007). "While the ALJ is responsible for making every reasonable effort to obtain from

the claimant's treating physician(s) all the medical evidence necessary to make a

---

[1]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

determination as to disability, it is the claimant's burden to prove he is disabled and to produce evidence in support of [his] claim." *Stringer v. Colvin*, (NO. CIV.A. 11-00662-B, 2013 WL 1311163, *6 (S.D. Ala. Mar. 29, 2013)(citing *Ellison*, 355 F. 3d at 1276). Though the ALJ has the duty to make a determination on the claimant's RFC, it is the claimant, not the ALJ, who has the burden of proving the RFC. *See* 20 C.F.R. § 404.1512(a) and (c)(instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.").

## V. Facts

Mr. Teichmiller has a high school diploma and was thirty-three years old at the time of the administrative hearing. (R. 52.) His past work experience includes employment as a general manager in a restaurant, warehouse worker, forklift operator, and corrugator helper. (R. 41.) According to the claimant, he injured his back in 2001 and received surgery that allowed him to return to work.  (R. 55.)  He testified that his pain increased, and he had additional surgery in 2007. (R. 39.) He claims he has been unable to work since January 17, 2007. (R. 35.) He is currently unemployed.

### A. Physical Limitations

The claimant sustained a work related injury to his back in 2000 or 2001, and subsequently underwent surgery on his L5-S1 disc in May 2001. (R. 55, 289.)  On

January 29, 2007, Dr. Charles Clark, a treating physician at Neurosurgical Associates, P.C., examined Mr. Teichmiller. (R. 279.) The claimant complained of back pain increasing to the point of interfering with his work. Dr. Clark found the claimant's neck to have a good range of motion and normal motor exam in both legs. He noted that straight leg raising produced some pain in the claimant's right hip and left back. (R. 283.) Dr. Clark diagnosed the claimant with a possible lumbar disc herniation. He ordered an MRI of the claimant's lumbar section and prescribed Lortab 5 and Celebrex. (R. 282.) Dr. Clark issued a lifting restriction of twenty-five pounds "until further notice." (R. 281.)

The claimant received his MRI on February 13, 2007, from Dr. Jeffrey K. Nicholson at Cullman Open MRI. The findings indicated moderate loss of height, desiccation, and a very mild broad-based posterior disc protrusion at L5-S1. (R. 285.) Dr. Nicholson concluded there was lumbosacral degenerative change with mild epidural scarring. (R. 286.) Dr. Clark reviewed the MRI findings on February 20, 2007, finding no clear cut evidence of disc herniation. He noted disc degeneration at L5-S1 and ordered a lumbar epidural block. (R. 287.) The epidural block was administered without complications by Dr. Jeremy Barlow at the Cullman Regional Medical Center Pain Clinic on March 20, 2007. (R. 291.) The claimant received another epidural block at the Pain Clinic from Dr. Peter Crisologo on March 27, 2007. (R. 293-294.) The claimant's prescription for Lortab 5 was refilled by a nurse at Neurosurgical Associates on April 23, 2007. (R. 295.)

7

The claimant returned to Dr. Clark on May 3, 2007, to follow up on the epidural block procedure. Because he reported no relief from the epidural, Dr. Clark discussed possible surgery, specifically a posterior lumbar interbody fusion (PILF) with pedicle screws at L5-S1. (R. 298.)  A nurse at Neurosurgical Associates issued a prescription for Lortab on May 8, 2007. (R. 299.) Dr. Clark authorized renewal of the Lortab prescription on May 18, 2007. (R. 300.) Dr. Clark again renewed the claimant's prescription for Lortab 5 on June 2, 2007, and June 13, 2007. (R. 301; 306.)

Dr. Clark performed the PILF surgery on the claimant on June 28, 2007. (R. 309*.)* The claimant reported, via telephone, drainage from his surgical wound, high temperature, and severe headache on July 3, 2007*.* (R. 311.) Dr. Clark advised him to seek immediate medical attention when the symptoms worsened. The claimant was admitted to St. Vincent's Hospital in Birmingham, Alabama, on July 4, 2007, with a probable CSF leak, where he was seen by Dr. Clark. (R. 312.) No surgical intervention was required, and he was discharged the following day. (R. 313.) On June 9, 2007, the claimant visited Dr. Clark for a follow-up visit on his surgical wound. Dr. Clark noted the wound had quit draining and scheduled the claimant for another follow-up. (R. 315.) Mr. Teichmiller returned to Dr. Clark on July 23, 2007. Dr. Clark noted that the "wound looks good. He is doing quite well." (R. 319.) He also noted that he made recommendations regarding Mr. Teichmiller's physical activity, but he did not specify what those recommendations were. On August 27, 2007, Dr. Clark examined the claimant and noted

the fusion to be progressing nicely. (R. 324.) Dr. Clark prescribed physical therapy two times per weeks for four weeks. (R. 322.) Dr. Clark also recommended a thirty pound weight-lifting restriction for two months. (R. 324.)

On September 5, 2007, the claimant attended his initial evaluation for physical therapy at SportsFirst Rehab. (R. 326.) The physical therapist noted the claimant was unable to forward bend two inches and that he could tolerate approximately thirty minutes in one position. The claimant returned to physical therapy on September 13, 2007, where he received E-Stim, ice, and ultrasound therapy. (R. 327.) When the claimant returned on September 20, 2007, he reported short-term relief after the previous physical therapy session but also reported that his legs felt weak. (R. 328.) The claimant received E-Stim, ice, ultrasound, and massage therapy. The claimant's rehab progress report, dated October 9, 2007 and signed by Dr. Alan McAvoy, DPT, noted that he had received two out of eight prescribed treatments, having cancelled or missed three scheduled treatments. (R. 329.) The report noted that the claimant reported feeling as through his back would give out. Also, the report noted that the claimant had met his goals of increasing muscular strength in his back and independence in his home exercise program; however, the claimant had not met his goals of increasing his range of movement or developing his ability to sit or stand for greater than forty-five minutes at a time.  Additionally, the report noted the claimant's pain levels were fluctuating rather than gradually decreasing.  Dr.

McAvoy recommended continued physical therapy to increase functional strength. (R. 329.)

Dr. Clark, agreeing with Dr. McAvoy's recommendation, prescribed four additional weeks of physical therapy two times per week. (R. 330.) The claimant returned to physical therapy at SportsFirst Rehab on November 29, 2007, where he reported his current pain level was 2-3/10.  (R. 331.)  He received E-Stim, hotpack, and iontophoresis therapy.  (*Id*.)  On December 12, 2007, the claimant returned to physical therapy for E-Stim, ice, and iontophoresis therapy. He reported decreased pain levels in the past month, and the therapist noted the claimant had progressed well toward his goals. (R. 332.)

On December 17, 2007, the claimant returned to Dr. Clark for a six month post-op follow-up. On examination, Dr. Clark reported the claimant was cleared to return to work with a fifty pound lifting restriction. Dr. Clark noted that the claimant would reach maximum medical improvement on June 28, 2008 and reported an additional 10% impairment rating based on the PILF with pedicle screws. (R. 333.)

On September 1, 2009, the claimant visited Dr. Robert Poczatek at Neurosurgical Associates, complaining of fairly significant lower back pain. (R. 340.) Dr. Poczatek examined the claimant finding a mildly antalgic gain, moderate tenderness upon palpitation along the lumbar paraspinals, and decreased range of motion with forward flexion at the lumbar spine. Dr. Poczatek also noted functional range of motion at the bilateral hips and knees, full strength with normal reflexes at the patellar and Achilles

10

tendon, and no loss of sensation. Dr. Poczatek ordered an MRI and prescribed Mobic, Flexeril, and Hydrocodone.  (R. 341.)  These prescriptions were renewed on October 1, 2009. (R. 343.) The claimant received the MRI on October 20, 2009. Dr. G. McRae interpreted the MRI results to show no disc herniation and lumbar spondylosis with borderline spinal stenosis at L4-5. (R. 344.) On the same day, Dr. Poczatek renewed the claimant's prescriptions for Hydrocodone, Flexeril, and Mobic on October 20, 2009. (R. 346.)

On November 17, 2009, Dr. Poczatek examined the claimant and noted spondylosis with some borderline central canal stenosis at the L4-5 level based on the MRI.  (R. 348.) The claimant reported that the medicine regiment decreased his pain as much as one-third. Dr. Poczatek ordered up to two facet injections at the L4-5 and L5-SI level.  On November 30, 2009, he renewed the claimant's prescriptions for Hydrocodone, Flexeril, and Mobic on November 30, 2009. (R. 351.) Dr. Poczatek again renewed the prescriptions on December 29, 2009. (R. 354.) The claimant received the bilateral lumbar facet blocks ordered on January 20, 2010, at the Cullman Regional Medical Center Pain Clinic. (R. 357.) Dr. Poczatek renewed the claimant's prescriptions for Flexeril, Mobic, and Hydrocodone on January 22, 2010. (R. 361-362.)

The claimant returned to Dr. Poczatek on February 16, 2010, reporting no appreciable long-term pain relief from the injections.  The claimant reported continuing pain in his lower back aggravated by prolonged ambulation. Dr. Poczatek ordered

11

continuation of the medicine regimen and scheduled the claimant for a Functional

Capacity Evaluation in order to set permanent work restrictions, (R. 364); however, it

does not appear that Dr. Poczatek sent the claimant for a Functional Capacity Evaluation

because no such evaluation is in the records from Dr. Poczatek.  The last records from Dr.

Poczatek indicate only that the claimant renewed his prescriptions on March 25, April 27,

June 1, and June 25, 2010. (R. 368-71.)

   *B. The ALJ Hearing*

   After Mr. Teichmiller's request for disability insurance and supplemental security

income were initially denied, he requested and received a hearing before an ALJ. (R. 35.)

At the hearing, the claimant testified that he first injured his back in 2001, but he was able

to return to work. (R. 55.) He testified that he stopped working again in 2007 as the pain

in his lower back became detrimental to his job. He testified that he has pain and

numbness in his hips, feet and legs, with worse pain in his right leg. The claimant testified

that, on a scale of 1 to 10, his pain is at least a 4/10 and a 7/10 or higher if he sits or

stands for an extended period of time.  (R. 56.)

   The claimant testified that he can sit for an hour to an hour and a half at a time for

approximately three to four hours during an eight hour work day. He testified he could

stand for an hour at a time and walk for half an hour before having to lay down. (R. 57.)

He testified that he had to lay down three to four times a day for at least an hour each time

for pain relief.  He also testified he has problems bending over and straightening back up.

The claimant testified he could lift 25-30 pounds at a time but not repetitively. He

testified his pain medication relieved some of his pain and improved the quality of his life

a little bit. (R. 59.)

A vocational expert, Patsy Bramlett, testified concerning the type and availability

of jobs that the claimant was able to perform.  (R. 60-70.)  She stated that the claimant's

skills as a general manager in a restaurant would be transferable to other light work, such

as food service jobs in a supervisory capacity. (R. 64.) Ms. Bramlett testified that the

claimant's skills were transferable to jobs such as a dining service supervisor, dining

room manager, food service supervisor, and a counter supervisor.  The ALJ asked Ms.

Bramlett to assume a hypothetical individual with the age, education, work history, and

training of the claimant who could occasionally life or carry twenty pounds, frequently lift

or carry 10 pounds, and sit for six out of eight hours but no longer than one hour at a time.

(R. 66.) The hypothetical individual could also stand for four out of eight hours though no

longer than one hour without sitting, walk for half an hour, had no limitations in upper

extremities but could not work on ladders, ropes, or scaffolds. The ALJ asked Ms.

Bramlett if this hypothetical individual could perform in any of the claimant's prior jobs.

(R. 67.)  She responded that, under these constraints, the hypothetical individual would

not be able to perform any of the claimant's prior jobs, including the restaurant manager,

because these jobs do not allow for a sit/stand option.  (*Id*.)  However, Ms. Bramlett

identified other unskilled jobs that a hypothetical person with the articulated limitations

could preform, including electronic worker, inspector, and heat sealer/packer. The claimant's representative asked Ms. Bramlett if an individual with a pain level of 7/10 or greater could perform these jobs.  (R. 69-70.) She responded that a pain level that high and the claimant's report of needing to lay down three to four times per day would eliminate all jobs. (R. 70.)

   *C. The ALJ's Decision*

   On February 3, 2011, the ALJ issued a decision finding the claimant was not disabled. (R. 35.) First the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (R. 37.) Next, the ALJ found that the claimant's chronic pain syndrome secondary to lumbosacral disc disease with radicular symptoms in his right leg did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 38.)

   The ALJ next considered the claimant's subjective allegations of pain to determine whether he had the residual functional capacity to perform past relevant work.  (*Id*.)  The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that the claimant's testimony regarding the intensity, persistence and limiting effects of his pain were not credible since his reported activities were "inconsistent with disabling limitations." (R. 39.) The ALJ referenced the claimant's own reports of taking care of his two children, doing housework, cooking meals, shopping in stores, paying bills, and playing sports with his children. *Id*.

In addition to the claimant's testimony, the ALJ referenced the treatment notes of Dr. Clark and Dr. Poczatek. The ALJ found that Dr. Clark's records indicated the claimant suffered less than severe pain since Dr. Clark cleared him to return to work in December 2007 with a fifty pound lifting restriction and only noted 15% impairment.[2] (R. 40.) The ALJ found that Dr. Poczatek's records did not show any disc herniation.  (*Id*.) The ALJ noted that Dr. Poczatek's records indicated a decrease in the claimant's pain in January and February 2010.

To support his conclusion the ALJ referenced the consultative physical examination performed by Dr. Richardson in May 2009.  (*Id*.) The ALJ noted that the claimant had reported an inability to do any prolonged standing, walking or bending, but he also reported he dressed himself, drove, and did household activities.  (*Id.*)  The ALJ noted that Dr. Richardson had observed the claimant moving on and off the exam table without difficulty and showing only moderate limitations. (*Id.*)   The ALJ found that Dr. Richardson's findings and opinion were supported by the medical evidence in the record and gave it "considerable weight."  (R. 41.)

The ALJ also referenced the consultative physical examination performed at the ALJ's request by Dr. Russell in November 2010. (R. 40.) The ALJ noted that Dr. Russell scored the claimant's upper extremity strength at 5/5 and limited his lower extremities to

---

[2]Dr. Clark's treatment note states that the he would give the claimant "an additional 10% impairment rating," not 15%.  (R. 333.)

"4+ to 5/5 due to his back pain." (R. 41.) The ALJ noted Dr. Russell's opinion that the claimant could lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for four hours, stand for three hours, and walk for two hours.  (*Id.*) The ALJ observed that "the report provided by Dr. Russell [was] basically . . . what the claimant had stated to him.  While some findings were reported, they were inconsistent with disabling limitations.  (*Id.* at R. 40.)

The ALJ mentioned the state agency single decisionmaker's opinion from June 2009 that the claimant would be limited to a reduced range of work at a light level of exertion.  Though the ALJ accepted these findings and noted they were consistent with the rest of the objective medical evidence on the record, the ALJ declined to provide any weight to the opinion as it was not from a medical source.  (*Id.* at R. 41.)

Based on his consideration of the record as a whole, the ALJ found that the medical impairments from which the claimant suffers, even if combined, would not prohibit a reduced range of light work.  (*Id.*)  He concluded that the claimant's impairments prevented him from returning to his past relevant work, but that the claimant retained the capacity to perform other work that exists in significant numbers in the national economy.  (R. 42.)  Therefore, he found the claimant was not disabled under the Social Security Act. (*Id.*)

**VI. Discussion**

   *A. Subjective Reports of Pain*

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. However, as discussed below, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The three part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt*, 921 F. 2d at 1223. "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of a disability. *Foote v. Chater*, 67 F. 3d 1553, 1561 (11th Cir. 1995). In applying the three-part standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F. 2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id.*

In this case, the ALJ found that the claimant suffers from an underlying medical condition capable of generating pain; however, he concluded that the entirety of the evidence, including the claimant's own testimony regarding his daily activities, failed to

support the claimant's alleged severity of pain.  The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain.  First, he referenced the claimant's own reported daily activities as noted in the Function Report completed in April 2009. He noted that the claimant takes care of his children, does housework, cooks meals, plays sports with his children, drives regularly to run errands, and visits with family and friends. The ALJ concluded that this wide range of reported activities was inconsistent with disabling pain and other limitations the claimant reported.

Next, the ALJ considered the claimant's medical records, specifically noting the claimant's visit to Dr. Clark in December 2007, when x-rays showed the back fusion has progressed nicely. The ALJ noted that Dr. Clark cleared the claimant to return to work with fifty pound lifting restriction. The ALJ referenced Dr. Clark's report that the claimant would meet maximum medical improvement on June 28, 2008 and only noted a slight impairment as a whole.

The ALJ also considered the claimant's visit to Dr. Poczatek in September 2009. He noted that, although the claimant reported a high level of pain, Dr. Poczatek's examination revealed no evidence of focal atrophy or abnormal tone, only moderate tenderness along the lumbar region, a functional range of motion in his hips and knees, and no evidence of nerve loss.  Also, the ALJ referenced the claimant's report that taking pain medications decreased his pain.

Finally, the ALJ considered the reports from the consultative physical examinations performed by Dr. Richardson and Dr. Russell. The ALJ noted that the claimant had reported an inability to do any prolonged standing, walking, or bending to Dr. Richardson, but Dr. Richardson found only moderate limitations due to the chronic pain syndrome. The ALJ considered Dr. Russell's examination. Although the ALJ concluded Dr. Russell had based his opinion on the claimant's subjective reports rather than his examination and medical records, the ALJ noted the limitations given were not significantly different than those noted by Dr. Richardson. The ALJ concluded that the claimant's underlying medical problem could indeed be expected to produce some pain and limitations, but that, even considering the combined effects of the claimant's impairments, the record as a whole did not support the claimant's subjectively reported pain and other limitations.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports his decision.

### B. Duty to Develop the Record

The claimant argues that the ALJ failed to properly develop the record by declining to obtain an additional medical source opinion or RFC assessment from a medical expert. The court finds that the ALJ is not required to obtain such and that the

ALJ properly developed the medical evidence and reports in the record to reach his findings.

At the administrative level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); 20 C.F.R. § 416.946(c). The ALJ is required to use all relevant evidence in the record to assess the claimant's RFC.  He may order a consultative examination, but he is required to order a consultative examination only when the evidence as a whole is not sufficient to support a decision on the claim.  "It is within the ALJ's discretion to order a consultative examination where he determines one is warranted." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001).

 In this case, the ALJ had sufficient evidence on the record to make his determination. The ALJ utilized the MSO provided by Dr. Russell, post-hearing, and specifically articulated the amount of weight given to the opinion and the reasons underlying his decision. The ALJ has the discretion to determine whether an additional consultative medical opinion is needed.  This court does not find that the ALJ abused his discretion in declining to obtain additional medical opinions when the record evidence is sufficient to support the ALJ's RFC determination.

## VII. Conclusion

For the reasons stated above, this court concludes that the decision of the Commission is supported by substantial evidence and is based on a fully developed record. The decision is due to be affirmed.

**DONE**, this 2nd day of September, 2013.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE